UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>Torrance R. Granrath,<br><br>    Debtor.<br>——————————————————<br><br>Monty Titling Trust I,<br><br>    Plaintiff,<br>v.<br><br>Torrance R. Granrath,<br><br>    Defendant. | Case No. 15bk18583<br><br>Chapter 7<br><br><br><br><br>Adversary No. 15ap00826<br><br>Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

The matter before the court arises out of the First Amended Complaint Objecting to Discharge and Dischargeability Pursuant to 11 U.S.C. § 727(a)(2)(A) and 11 U.S.C. § 727(a)(4)(A) [Adv. Dkt. No. 8] (the "Amended Complaint"), filed by Monty Titling Trust I ("Monty") in the above-captioned adversary proceeding (the "Adversary"), objecting to the discharge of Torrance R. Granrath (the "Debtor"). In Count I, Monty alleges that the court should deny the Debtor's discharge due to prepetition transfers the Debtor made within the prohibitory period violating section 727(a)(2)(A) of the Bankruptcy Code (defined below). In Count II, Monty alleges that the Debtor failed to disclose certain assets on his bankruptcy petition, therefore, violating section 727(a)(4)(A) of the Bankruptcy Code.

The matter was tried before the court in two consecutive half days of trial on October 25 and 26, 2016 (the "Trial").

For the reasons set forth herein, the court holds that Monty did not satisfy its burden with respect to Count I, as it did not prove by a preponderance of the evidence that the Debtor acted with actual intent to hinder, delay, or defraud creditors, as required by section 727(a)(2)(A). As to Count II, the court also holds that Monty did not satisfy its burden. Monty did not establish by a preponderance of the evidence that the Debtor acted with fraudulent intent when failing to disclose certain assets on his bankruptcy petition, as required by section 727(a)(4)(A).

This Memorandum Decision constitutes the court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules" and, individually, "Bankruptcy Rule"). A separate judgment order will be entered pursuant to Bankruptcy Rule 9021.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C § 157(b)(1). An objection to a debtor's discharge may only arise in a case under the Bankruptcy Code and is specified as a core proceeding. 28 U.S.C § 157(b)(2)(A), (J); *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004); *Hunt v. O'Neal (In re O'Neal)*, 436 B.R. 545, 550 (Bankr. N.D. Ill. 2010) (Schmetterer, J.).

Accordingly, final judgment is within the scope of the court's authority.

## PROCEDURAL HISTORY

In considering Monty's objections to the Debtor's discharge, the court has considered the evidence and arguments presented by the parties at the Trial and reviewed the Amended Complaint, any attached exhibits submitted in conjunction therewith and each of the following:

(1)     Answer to First Amended Complaint Objecting to Discharge and Dischargeability Pursuant to 11 U.S.C. § 727(a)(2)(A) and 11 U.S.C. § 727(a)(4)(A) [Adv. Dkt. No. 10];

(2)     Amended Final Pretrial Order Governing First Amended Complaint Objecting to Discharge and Dischargeability Pursuant to 11 U.S.C. § 727(a)(2)(A) and 11 U.S.C. § 727(a)(4)(A) [Adv. Dkt. No. 21] (the "Amended Final Pretrial Order);

(3)     Pretrial Statement [Adv. Dkt. No. 25] (the "Pretrial Statement"); and

(4)     Plaintiff's Motion *in Limine* [Adv. Dkt. No. 26] (the "Motion *in Limine*").

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though the foregoing items do not constitute an exhaustive list of the filings in the Adversary, the court has taken judicial notice of the contents of the docket in this matter and the underlying bankruptcy case. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

## EVIDENTIARY RULINGS

Pursuant to the Amended Final Pretrial Order, "[a]ny exhibit to which an objection is not raised in the Pretrial Statement will be received into evidence without an offer during the trial." Prior to the Trial, Monty filed the Motion *in Limine* seeking to exclude all exhibits presented by the Debtor (save DX 5) that attempted to challenge Monty's standing in the Adversary.[1]

During argument on the Motion *in Limine*, the Debtor questioned for the first time whether Monty was the real party in interest with respect to this action. Rule 17 of the Federal Rules of Civil Procedure, made applicable through Bankruptcy Rule 7017, provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17. The exhibits that Monty sought to exclude were purportedly ones which might have established that Monty was not the real party in interest.

Monty's evidentiary objection, in the context of the Motion *in Limine*, was at its basis a challenge to the relevance of the evidence to the questions before the court. While irrelevant evidence is not admissible, Fed. R. Evid. 402, in a bench trial such as an adversary proceeding in the bankruptcy court, "there are no problems of juror prejudice." *Henderson v. Legal Helpers Debt Resolution, L.L.C. (In re Huffman)*, 505 B.R. 726, 753 (Bankr. S.D. Miss. 2014). "The judge may weigh and determine the relevance of each exhibit in the course of concluding the material facts." *Schaumburg Bank & Trust Co., N.A. v. Hartford (In re Hartford)*, 525 B.R. 895, 900 n.1 (Bankr. N.D. Ill. 2015) (Barnes, J.). As such, the court declined to exclude the Standing Exhibits at the outset of the Trial but instead, as with all exhibits, reserved its ruling on the questions of relevance and weight.

The Debtor, however, did nothing further. The Debtor made no reference to the Standing Exhibits at the Trial and brought no actual challenge to Monty's standing (other than statements made in defending the Motion *in Limine*). Even if the Debtor's statements in that limited context could be deemed to be an appropriate challenge to Monty's standing, "courts . . . have overwhelmingly held that a Rule 17 objection is waived if not raised with reasonable promptness." *Trenwick Am. Rein. Corp. v. IRC, Inc.*, 764 F. Supp. 2d 274, 293 (D. Mass. 2011). Such a challenge, made on the day of the Trial and only in a circuitous manner, was neither reasonable nor prompt. As a result, and given the court's determination of the underlying substantive issues in favor of the Debtor, the court finds the Standing Exhibits to be of little or no probative value and declines to consider them.

The Debtor did not raise any objection to Monty's exhibits, and thus, pursuant to the Amended Final Pretrial Order, all of Monty's exhibits and DX 5 were admitted.

As with the ruling on the Motion *in Limine*, however, the court advised both parties that although their exhibits were admitted, the court's determinations regarding relevance and weight of any exhibit depended on the parties' use of the specific exhibit and the extent that the parties' use explained the exhibit's importance. "If the exhibit has been entirely unmentioned in this trial, [the court] will not mention it in [its] ruling." Tr. 18-19, Oct. 25, 2016.

---

[1] Such exhibits, other than DX 5, referred to herein as the "Standing Exhibits."

3

## BACKGROUND

Prior to this petitioning for relief under the Bankruptcy Code, the Debtor acted as president and sole shareholder of Torry Granrath's Custom Concrete, Inc. ("Granrath Concrete") for twenty-nine years. Tr. 100, Oct. 25, 2016. On top of laying concrete, Granrath Concrete owned and managed numerous commercial buildings throughout the Chicago suburbs. *Id.* at 102.

Monty's relationship to the Debtor stems from a series of loans between Granrath Concrete and BMO Harris Bank, N.A. ("BMO Harris"). Pretrial Statement, ¶ 12. The Debtor, as president and sole shareholder of Granrath Concrete, personally signed a series of promissory notes and commercial guaranties (the "Notes and Guaranties") on the loans. *Id.* at ¶ 13.

Despite the economic challenges faced by the businesses in this country over the last decade, including acute challenges within the building industry, the Debtor remained confident that Granrath Concrete could survive the economic hardships of that time. Tr. 102, Oct. 25, 2016. Demonstrating that confidence, the Debtor used his personal 401(k), valued at $250,000.00, to pay off delinquent taxes on Granrath Concrete's buildings. *Id.* at 107, 110. The Debtor also tried to restructure the BMO Harris loans. Pretrial Statement, ¶ 14. Despite these efforts, Granrath Concrete defaulted on the BMO Harris loans and, in part due to BMO Harris' collection efforts, ultimately filed for protection under chapter 7 of the Bankruptcy Code. *In re Torry Granrath's Custom Concrete, Inc.*, Case No. 15bk14111 (Bankr. N.D. Ill., petition filed Apr. 21, 2015).

BMO Harris did not just seek recovery from Granrath Concrete, however. On February 13, 2013, BMO Harris sought to enforce the Notes and Guaranties against the Debtor in the Circuit Court of Cook County, Illinois (the "State Court"). *BMO Harris Bank, N.A. v. Torrance R. Granrath*, Case No. 13 L 1582 (Ill. Cir. Ct. Cook Cnty., Law Div., complaint filed Feb. 13, 2013). Monty was subsequently substituted as the plaintiff in the matter. On February 27, 2015, the State Court entered summary judgment against the Debtor and in favor of Monty in the amount of $7,211,551.88 (the "Judgment"). PX 1.

The Debtor thereafter on May 28, 2015 filed a voluntary petition for bankruptcy relief under chapter 7 of the Bankruptcy Code [Dkt. No. 1] (the "Petition"). While, in the face of the multi-million dollar Judgment, filing for bankruptcy relief was undoubtedly reasonable, the question is whether other actions taken by the Debtor, in contemplation of the bankruptcy or otherwise, were reasonable.

On January 11, 2016, Monty brought that question before the court by filing the Adversary.[2] In so doing, Monty does not ask that the Judgment be excepted from the Debtor's discharge. Nothing on the record before the court leads it to conclude that such a nondischargeability action would be successful. Instead, Monty challenges the Debtor's entire discharge, seeking to have the Debtor completely denied bankruptcy relief.

---

[2] Monty also filed a proof of claim for the Judgment on October 8, 2015 in the Debtor's bankruptcy case. Claim No. 5.

## FINDINGS OF FACT[3]

From the review and consideration of the procedural background, as well as the evidence presented at the Trial, the court determines the salient facts to be and so finds as follows:

A. <u>The Citation and Show Cause Order</u>

(1) On February 27, 2015, the State Court entered the Judgment against the Debtor in the amount of $7,211,551.88. PX 1.

(2) On March 25, 2015, the Clerk of the Circuit Court of Cook County, Illinois issued a Citation to Discover Assets of the Debtor (the "<u>Citation</u>") in relation to the Judgment. PX 3.

(3) The Citation provided that the Debtor was prohibited "from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtor. . . ." *Id.*

(4) The Debtor received notice the next day but only read a portion of the Citation before handing it over to counsel. PX 4; Tr. 65, Oct. 25, 2016.

(5) The Debtor failed to appear before the court for the Citation on April 28, 2015. PX 5. As a result, the State Court issued a Rule to Show Cause (the "<u>Show Cause Order</u>") on the same date. *Id.*

(6) The Show Cause Order provided that the Debtor "is prohibited from transferring or disposing any property or asset." *Id.*

(7) The Debtor received notice of the Show Cause Order on April 30, 2015. PX 6.

(8) On May 28, 2015 (the "<u>Petition Date</u>"), the Debtor commenced his chapter 7 bankruptcy case.

B. <u>Prepetition Transfers</u>

1. *2012 Chrysler Transfer*

(9) Prior to the Petition Date, the Debtor owned a 2012 Chrysler 300S (the "<u>2012 Chrysler</u>") "free and clear" of all liens. PX 7.

(10) On May 26, 2015, two days prior to the Petition Date, the Debtor traded the 2012 Chrysler to St. Charles Chrysler Dodge Jeep, Inc., d/b/a Al Piemonte Cadillac, Inc. (the "<u>Dealership</u>") as part of a transaction to lease a 2015 Chrysler 300S and a 2015 Jeep Cherokee (together, the "<u>Leased Vehicles</u>"). PX 8, 9.

---

[3] To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are adopted as such. Adjudicative facts may also be found and determined later in this Memorandum Decision.

5

(11) The trade was conducted as a sale of the 2012 Chrysler and down payment of the sale proceeds on the Leased Vehicles. The sale proceeds of the 2012 Chrysler were $20,000.00 *Id.*

(12) No record of this initial transfer of the Leased Vehicles has been provided to the court.

(13) When the Debtor filed for bankruptcy two days later, the Dealership rejected the application for the leases. Tr. 44-45, Oct. 25, 2016. The Dealership requested that the Debtor's wife, Rhonda Granrath ("Rhonda"), sign for the leases instead. Tr. 63, Oct. 25, 2016; *see also* PX 8 (the leases signed by Rhonda).

(14) Rhonda signed for the leases after the Debtor filed for bankruptcy. Tr. 45, Oct. 25, 2016. Rhonda went into the Dealership, signed the leases and left with the 2015 Jeep. *Id.* at 84.

(15) The Debtor testified that the trade of the 2012 Chrysler for the Leased Vehicles was conducted upon the advice of friends who had also gone through bankruptcy and his bankruptcy counsel. *Id.* at 41-42. The Debtor further testified that the motivation behind the transaction was ensuring that both the Debtor and Rhonda had vehicles to drive, as the vehicle Rhonda had been driving was surrendered to the trustee in Granrath Concrete's bankruptcy. *Id.* at 44.

2. *The Diggum Checks*

(16) After losing Granrath Concrete, the Debtor took up work at Diggum Up, Inc. ("Diggum"), in late March 2015 as a wage earner. The Debtor's responsibilities included running a backhoe, estimating excavations, "pounding pavement" and attracting new business for Diggum.

(17) On March 30, 2015, Rhonda opened a checking account at JPMorgan Chase Bank (the "Bank Account") in her name. PX 12.

(18) On a bi-weekly basis, the Debtor received a check from Diggum for a net pay of $1,793.10. PX 13. The gross pay was $2,500.00. Pretrial Statement, ¶ 45. From April 2015 to May 2015, each time the Debtor received a paycheck from Diggum (collectively, the "Diggum Checks"), he endorsed the check to Rhonda and she deposited the check in the Bank Account. PX 13, 14.

(19) The approximate net value of the Diggum Checks is $8,965.50. PX 13. The gross value is presumably, therefore, $12,500.00.

(20) The Debtor exercised some control over the Bank Account. Tr. 72, Oct. 25, 2016. Further, both the Debtor and Rhonda testified that the funds from the Bank Account were only used to pay household expenses. *Id.* at 67, 90.

(21) The use of the Bank Account for household expenses was apparently done on the advice of the Debtor's bankruptcy counsel. *Id.* at 42.

C. <u>Omissions on Bankruptcy Petition</u>

(22) The Debtor did not disclose the Bank Account and the transfers of the Diggum Checks to Rhonda in the Debtor's petition, schedules or statement of financial affairs. PX 16.[4]

(23) The Debtor did, however, disclose the income represented in the Diggum Checks. *Id.*

## ISSUES PRESENTED

The Amended Complaint alleges two counts under section 727 of the Bankruptcy Code.

In Count I, Monty alleges that the Debtor violated section 727(a)(2)(A) by making prepetition transfers of assets within the prohibitory period. Specifically, Monty alleges that the Debtor transferred the 2012 Chrysler and the Diggum Checks within one year of filing for bankruptcy relief in an effort to defraud creditors. In Count II, Monty alleges the Debtor violated section 727(a)(4)(A) for failing to disclose the Bank Account and the transfers of the Diggum Checks on his bankruptcy petition.[5]

Both issues before the court ultimately turn on whether the Debtor committed these acts and omissions with the level of intent required by each specific subsection of section 727.

## DISCUSSION

"The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor." *Soft Sheen Prods., Inc. v. Johnson (In re Johnson)*, 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) (Squires, J.). To advance the policy of providing a debtor a fresh start, objections to a debtor's discharge are to be construed strictly against movants and liberally in favor of a debtor. *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996).

The party objecting to a debtor's discharge bears the burden of proof. Fed. R. Bankr. P. 4005; *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966 (7th Cir. 1999). The objecting party must meet this burden by a preponderance of the evidence. *Scott*, 172 F.3d at 966-67.

Monty asks that the court deny discharge for the Debtor under sections 727(a)(2)(A) and (a)(4)(A), each of which require a showing of the Debtor's intent. *Hartford*, 525 B.R. at 905.

With that in mind, the court will consider each count, and thereby each applicable subsection of section 727, in turn.

---

[4] Monty contended throughout the Trial that the Debtor failed to disclose the 2012 Chrysler transfer for the Leased Vehicles. That contention is, however, without merit. The Debtor did list the transfer. PX 16 at 36 (Debtor's Statement of Financial Affairs).

[5] In the Amended Complaint, Monty also alleged that the Debtor failed to disclose several shotguns, a handgun and a compound bow (the "<u>Weapons</u>"). Amended Complaint, ¶ 45. Monty did not, however, make any reference to the Weapons during the Trial. As a result, the court deems this allegation to have been abandoned by Monty and does not consider the issue further herein.

A.      Count I - 11 U.S.C. § 727(a)(2)(A)

Section 727(a)(2)(A) provides that:

(a)     The court shall grant a debtor's discharge, unless—

> (2) the debtor, *with intent to hinder, delay, or defraud a creditor* or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> > (A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A) (emphasis added).

To succeed with a claim under section 727(a)(2)(A), Monty must prove that: (1) the Debtor transferred property belonging to the estate; (2) within one year of the filing of the petition; and (3) with the intent to hinder, delay, or defraud a creditor of the estate. *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002), *aff'd sub nom. Kontrick v. Ryan*, 540 U.S. 443 (2004); *Structured Asset Servs., LLC v. Self (In re Self)*, 325 B.R. 224, 237 (Bankr. N.D. Ill. 2005) (Squires, J.).

In Count I, Monty alleges that the transfer of the 2012 Chrysler and transfer of the Diggum checks to Rhonda violated section 727(a)(2)(A). In that regard, the parties have not contested that the Debtor transferred the 2012 Chrysler and Diggum Checks within one year before filing for bankruptcy.[6] What remains, therefore, is the third factor—the important question of intent. *See Molfese v. Bonomi (In re Bonomi)*, Case No. 11bk26652, Adv. No. 13ap00119, 2014 WL 640982, at *4-8 (Bankr. N.D. Ill. Feb. 18, 2014) (Barnes, J.) (explaining the important role played by the bankruptcy court as the trial court presiding over matters of intent).

The issue of a debtor's intent is a question of fact to be determined by the bankruptcy judge. *In re Smiley*, 864 F.2d 562, 566 (7th Cir. 1989). When determining intent, the court should consider the debtor's whole pattern of conduct. *In re Yonikus*, 974 F.2d 901, 905-06 (7th Cir. 1992); *Rezin v. Barr (In re Barr)*, 207 B.R. 168, 176 (Bankr. N.D. Ill. 1997) (Schmetterer, J.). Intent to deceive may be established through direct evidence or inference, *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004) (Schmetterer, J.) (*citing In re Sheridan*, 57 F.3d 627 (7th Cir. 1995)), and because a debtor is not likely to testify that his intent was fraudulent, the court may deduce such "intent from all the facts and circumstances of a case." *Filmar, Inc. v. White (In re White)*, 63 B.R. 742, 744 (Bankr. N.D. Ill. 1986) (Eisen, J.).

As the finder of fact in a bench trial, a court may take into account the interest witnesses may have in the outcome of the case, their intentions, their honesty and their conduct while

---

[6]     Despite this, the exact timing of the 2012 Chrysler transfer is not fully established. While the Debtor traded the 2012 Chrysler for the Leased Vehicles, the value of the 2012 Chrysler remained the Debtor's as a credit toward the Leased Vehicles. It appears that only after the Petition Date had passed, when the Dealership rejected the leases and the leases were reissued in Rhonda's name, did the value of the 2012 Chrysler transfer from the Debtor. Such a postpetition transfer does not satisfy the elements of section 727(a)(2)(A), as it applies to transfers *before* the Petition Date only.

8

testifying. *Fosco v. Fosco (In re Fosco)*, 289 B.R. 78, 87 (Bankr. N.D. Ill. 2002) (Black, J.) (*citing Welch v. Tennessee Valley Authority*, 108 F.2d 95, 101 (6th Cir. 1939)). "'[T]he carriage, behavior, bearing, manner, and appearance of a witness-in short, his demeanor-is a part of the evidence.'" *Fosco*, 289 B.R. at 87 (*quoting Dyer v. MacDougall*, 201 F.2d 265, 268 (2d Cir. 1952)).

Here, the court detected no *indicia* of dishonesty or deceit. While Monty would have the court believe that the Debtor is dishonest, the Debtor and Rhonda each presented themselves as credible witnesses. While many of the statements made by them were self-serving, many were not. *See, e.g.*, Tr. 46 & 65, Oct. 25, 2016 (Debtor's testimony stating that he was "guilty.").[7] The Debtor consistently answered questions in a forthright manner and did not attempt to circumvent questions to put himself in a positive light.

Further, the overall facts and circumstances of the Debtor's case do not support the conclusion that Monty seeks to have the court reach—that the Debtor was acting with dishonesty or deceit. It is undisputed that the Debtor contributed his personal 401(k) in an effort to save the business. Had the Debtor sought to deceive Monty, those were funds better kept by him. His personal contribution in this regard far exceeds the much more minimal transactions of which Monty complains.

The court now turns to the two transfers challenged by Monty in Count I: the 2012 Chrysler and the Diggum Checks.

1. *The 2012 Chrysler*

The only question before the court with respect to the 2012 Chrysler is whether the Debtor intended to hinder, delay, or defraud Monty with respect to the trade for the Leased Vehicles.

Monty attempts to establish the Debtor's actual intent in this regard by demonstrating that the Debtor knew of the restrictions in the Citation and Show Cause Order and thus acted with intent to hinder, delay, or defraud Monty in a transfer Monty believes was targeted at defeating those restrictions. The Citation clearly prohibits the transfer of non-exempt property. PX 3. It states that the Debtor is prohibited "from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtor . . . ." *Id.* The Show Cause Order contains a similar restriction. PX 5. It is Monty's contention that the Debtor knew of the contents of the Citation and the Show Cause Order and that he therefore knew that the transfer of the 2012 Chrysler was wrong. That, Monty contends, is enough to establish the Debtor's intent.

---

[7] The Debtor's statements of his "guilt" were clearly made out of frustration and not as true statements of his intent at the time the transactions occurred or an admission to the relief requested in the Amended Complaint. Guilt and innocence are criminal concepts not applicable here. Other than tending to support his overall demeanor as someone who is candid and not attempting to evade whatever responsibility he has, these statements were qualified (each were prefaced by statements such as "if the transfers were wrong"), and were therefore of little value. They were not admissions that he intended to hinder, delay, or defraud creditors. The Debtor's culpability is a conclusion of law to be reached by the court, not the Debtor. *Hartford*, 525 B.R. at 906.

9

The law does not support this conclusion. Monty's belief that the failure to comply with a state court order—even one which has the effect of preserving assets—automatically satisfies the intent standard of section 727 is not directly supported by the case law.

While neither party here has provided case law on this specific point, the court is aware that various courts have taken different approaches in answering whether failure to abide by a state court collection order equates to section 727 intent. *Compare Grochocinski v. Campbell (In re Campbell)*, 475 B.R. 622, 636 (Bankr. N.D. Ill. 2012) (Cassling, J.) (evasion of service of process in citation proceedings does not equate to intent under section 727) *and Frost Nat'l Bank v. Doolen (In re Doolen)*, Case No. 95-71286, 1996 WL 33406029, at *3 (Bankr. C.D. Ill. May 7, 1996) (noncompliance with citation order does not equate to intent under section 727) *with First State Bank of Bloomington v. Cannell (In re Cannell)*, Case No. 12-71705, 2013 WL 2467787, at *5 (Bankr. C.D. Ill. June 7, 2013), *aff'd*, Case No. 13-CV-3226, 2014 WL 3725929 (C.D. Ill. July 28, 2014) (debtor found to have intended to hinder or delay creditors in violating state court citation order).

The *Cannell* case is, however, distinguishable in that the debtor in question, a practicing attorney, testified that he knew the transfers in question would impede the bank's collection efforts. *Cannell*, 2013 WL 2467787, at *6. Regardless, this court believes that the *Doolen* court has the better approach here. As the *Doolen* court stated: "[T]he mere violation of a state court order is not grounds for the denial of a discharge under § 727(a)(2). Any remedy for this violation lies in the state court where the violation occurred, not in the Bankruptcy Court." *Doolen*, 1996 WL 33406029, at *3.

More troubling, perhaps, is a recent Seventh Circuit opinion. *In re Marcus-Rehtmeyer*, 784 F.3d 430, 437 (7th Cir. 2015). In *Marcus-Rehtmeyer*, the debtor in question actively concealed new income and related assets from a citation proceeding. *Id.* at 441-42. The Seventh Circuit, while recognizing that the intent standard under section 727 is a question of fact, concluded under the facts of that case that the noncompliance established the debtor's intent. *Id.* at 439.

While it could be that *Marcus-Rehtmeyer* takes away this court's discretion as the fact finder regarding intent in matters such as these, neither party makes that argument. Further, the competing Seventh Circuit precedent discussed below was apparently not considered. As a result, the court declines to determine here that *Marcus-Rehtmeyer* creates some sort of immutable standard. Irrespective of whether the Debtor violated the orders, Monty must still therefore satisfy the standards set forth in applicable case law regarding intent.

The evidence also does not support Monty's assertion. The Debtor testified as to a lack of specific knowledge of the contents of the Citation. Tr. 65, Oct. 25, 2016. That testimony was credible and is in accord with the Debtor's absence at the Citation hearing. PX 5. Although the Debtor testified that he understood that the Show Cause Order prohibited him from transferring his own assets, Tr. 54-55, Oct. 25, 2016, he did not testify that he understood that this meant he could not trade in the 2012 Chrysler. Nor did the Debtor testify as to whether he knew if the transfer of the 2012 Chrysler was wrong in relation to his upcoming bankruptcy.

The Debtor's statements are, of course, self-serving. In that regard, while it is true that, as stated above, it is a rare case where a debtor admits his or her fraudulent intent, *White*, 63 B.R. at 744, in the normal case the court may still infer a debtor's intent from the surrounding facts. *See, e.g., Steege v. Johnsson (In re Johnsson)*, 551 B.R. 384, 409 (Bankr. N.D. Ill. 2016) (Barnes, J.) ("The Debtor's

actions are quite simply at odds with the theories she espouses and her testimony was, at best, unconvincing.").

Such is not the case here.

The Seventh Circuit has made clear that bankruptcy planning does not alone satisfy section 727's requirement of intent. *Smiley*, 864 F.2d at 567 ("[W]e do not find bankruptcy planning necessarily to be a fraud on creditors."). In *Smiley*, the Seventh Circuit declined to adopt a *per se* rule that found requisite intent where debtors converted nonexempt assets to exempt ones on the eve of bankruptcy. *Id.* at 566-67 (focusing inquiry on the debtor's intent to maximize exemptions rather than the resulting hindrance and delay). The court recognized that such debtors may, in part, be motivated by intent to hinder or delay creditors, but declined to find such mixed intent controlling. *Id.* at 567. Instead, the Circuit directed bankruptcy courts to look for extrinsic signs of fraud in determining intent, such as "a pattern of sharp dealing prior to bankruptcy" and that "the conversion rendered the debtor insolvent." *Id.* (citation omitted). The *Smiley* case received no mention in *Marcus-Rehtmeyer*.

Here, the Debtor testified that, upon the advice of friends and counsel,[8] he took the actions in question as a matter of bankruptcy planning. Tr. 41-42, Oct. 25, 2016. The timing of the transaction supports that testimony, bearing a closer relationship to the Petition Date than the issuance of the Judgment, the Citation and the Show Cause Order. The court finds that testimony to be credible.

Also credible was the Debtor's testimony that the transaction in question was, in part, driven by the need to replace Rhonda's vehicle, which had been voluntarily surrendered to the bankruptcy trustee of Granrath Concrete prior to the Debtor's Petition Date. Tr. 44, Oct. 25, 2016. The Debtor testified that he needed to ensure transportation for work. Tr. 46, Oct. 25, 2016.

In light of the Debtor's credible claims of bankruptcy planning and motivations other than those which were proscribed, it is the burden of Monty, as the party bearing the burden of proof in this matter, Fed. R. Bankr. P. 4005; *Scott*, 172 F.3d at 966, to demonstrate sufficient extrinsic signs of fraud so as to satisfy *Smiley*. It has not done so.

In this case, the Debtor's testimony regarding bankruptcy planning and actions are in accord. Unlike in *Cannell*, the Debtor here did not testify to any intent to hinder or delay Monty. *See Cannell*, 2013 WL 2467787, at *6. Under *Smiley*, no evidence of a pattern of sharp dealing exists. No evidence exists, especially in light of the amount of the Judgment, that a transaction as small as that involving the 2012 Chrysler rendered the Debtor insolvent. Further, despite Monty's allegations, the transaction in question was disclosed by the Debtor in his bankruptcy filings. PX 16. at 36. No evidence exists that the Debtor concealed the transaction in question or failed to cooperate in Monty's investigation of the same.

---

[8] Though the Debtor has frequently testified that he acted on the advice of counsel, *see, e.g.*, Tr. 17, Oct. 26, 2016, the court detected no attempt of the Debtor thereby to excuse his actions, only to explain them. Such an excuse would not be satisfactory. As the Seventh Circuit has made clear, attorney advice does not shelter a debtor from his actions. *Cannon-Stokes v. Potter*, 453 F3d 446, 449 (7th Cir. 2006). It does, however, shed light on the Debtor's intent.

11

This is not to say that all bankruptcy planning is acceptable. There can clearly be cases where the debtor is hiding his or her deceit under the guise of planning. But when that planning is targeted at simply permitting the debtor to get by—as is the case here where the debtor testified that continued possession of a vehicle was necessary for his employment—the court believes that the need for such planning is precisely why the exceptions recognized in *Smiley* exist.

As a result, the court concludes that the Debtor has provided a credible explanation of his actions, supported by the facts, which does not induce a finding of fraudulent intent. Monty has failed to carry its burden with respect to the transfer of the 2012 Chrysler.

2. *The Diggum Checks*

As with the 2012 Chrysler, the only question before the court with respect to the Diggum Checks is whether the Debtor intended to hinder, delay, or defraud Monty. As before, Monty argues that the fraudulent intent of the Debtor reveals itself through the service of the Citation and Show Cause Order. As before, this court finds that argument to be unavailing.

Consider for the moment the amounts in question here. Under the Illinois wage deduction process, a judgment creditor can reach at a most 15% of a debtor's gross wages. 735 ILCS 5/12-803. Here, each bi-weekly Diggum Check grossed $2,500.00. Fifteen percent of such amount is less than $400.00, making the amount subject to withholding under Illinois law for the period in question just under $2,000.00—in a bankruptcy case with over $4 million in scheduled assets and $7 million in debts. The amount in question here is *de minimus*.

Still, that would matter little if the court could conclude that the Debtor set out to defraud Monty. The court cannot reach that conclusion. Even if Monty could establish actual intent to hinder, delay, or defraud creditors via noncompliance with the Show Cause Order, the court concludes that Monty has failed to show that this order would have prevented the deposit of the Diggum Checks.

Due care is taken by the Illinois post judgment remedy statutes to respect assets which are exempt. 735 ILCS 5/12-1001 *et seq*. The Citation, on its face, appeared to respect such restrictions, at least by stating that it did not apply to exempt assets. PX 3. While the Show Cause Order appeared to be more expansive, PX 4, pursuant to 735 ILCS 5/12-1001, it too should not have been able to reach exempt assets.

Whether wages are subject to such exemptions is open to debate. The Illinois exemption statute states that "[t]he personal property exemptions . . . shall not apply to . . . wages . . . *that are required to be withheld in a wage deduction proceeding* . . . ." 735 ILCS 5/12-1001 (emphasis added). The emphasized text appears to make clear that only wages which are subject to garnishment—a wage deduction proceeding—may not be exempted. *Id.*; *see also Cervantes v. HBLC, Inc. (In re Cervantes)*, 503 B.R. 689, 693 (Bankr. N.D. Ill. 2013) (Baer, J.). There was no wage deduction proceeding here. Monty nonetheless appears to take the position that the Debtor was legally obligated to turn over his wages but does not connect the dots. In light of the wage deduction protections afforded debtors under Illinois law, that position appears, at best, to be overreaching.

As discussed with the 2012 Chrysler, the Seventh Circuit has made clear that bankruptcy planning is not prohibited *per se*. *Smiley*, 864 F.2d at 567. It is once again the burden of Monty, as

12

the party bearing the burden of proof in this matter, Fed. R. Bankr. P. 4005; *Scott*, 172 F.3d at 966, to demonstrate sufficient extrinsic signs of fraud so as to satisfy *Smiley*. Again, it has not done so.

The Debtor has provided a plausible explanation of why the Bank Account was opened and how it was used. Prior to the failure of Granrath Concrete and the Debtor's new employment as a wage earner, the Debtor's financial circumstances were understandably different. That the Bank Account was opened in conjunction with the Debtor's new employment supports these statements, there is no past course of conduct to contradict it.

The court concludes that the Debtor has provided a credible explanation of his actions which is supported by the facts. Monty has failed to establish intent with respect to the Diggum Checks.

Finally, Monty appears to argue that the transfers to Rhonda would be avoidable and that, as a result, must be fraudulent. This argument misapprehends what is required to establish intent under section 727. The criteria for avoidance under sections 547 or 548 of the Bankruptcy Code are not the same for denial of discharge under section 727. Intent, for example, can be constructive in some cases of the former. That is not the case for the latter.

Based on the uncontroverted testimony of the Debtor and Rhonda that the Diggum Checks were used solely for household expenses and the Debtor maintained control over the Bank Account, it does not appear, even under the less strict standards applicable to sections 547 and 548, that the transfers in question would be avoidable.

Accordingly, Monty has failed to carry its burden with respect to Count I of the Amended Complaint. The court declines to deny the Debtor's discharge under to section 727(a)(2)(A), and judgment in favor of the Debtor on this count will be entered.

B. <u>Count II - 11 U.S.C. § 727(a)(4)(A)</u>

Section 727(a)(4)(A) of the Bankruptcy Code provides that the court shall not grant a debtor a discharge if the debtor knowingly and fraudulently, in or in connection with the bankruptcy case, made a false oath or account. 11 U.S.C. § 727(a)(4)(A).

To prevail on a denial of discharge under section 727(a)(4)(A), the movant must prove that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011); *see also Rutili v. O'Neill (In re O'Neill)*, 468 B.R. 308, 327 (Bankr. N.D. Ill. 2012) (Schmetterer, J.).

"A debtor's petition, schedules, statement of financial affairs, statements made at a section 341 meeting, testimony given at a Bankruptcy Rule 2004 examination, and answers to interrogatories all constitute statements under oath" for purposes of section 727(a)(4)(A). *John Deere Co. v. Broholm (In re Broholm)*, 310 B.R. 864, 880 (Bankr. N.D. Ill. 2004) (Schmetterer, J.).

"Intent under section 727(a)(4)(A) may be inferred from circumstantial evidence or by inference based on a course of conduct." *Baccala Realty, Inc. v. Fink (In re Fink)*, 351 B.R. 511, 527 (Bankr. N.D. Ill. 2006) (Squires, J.). Courts have found that a debtor must have acted with a

13

"reckless disregard" for the truth based on the omissions. *Stamat*, 635 F.3d at 978. A movant can establish "reckless disregard" by showing that the debtor made numerous false statements that, taken in a cumulative effect, harm the bankruptcy estate. *Id.* at 982.

In Count II, Monty alleges that the Debtor's failure to disclose the Bank Account and transfers of the Diggum Checks to Rhonda on his Petition violated section 727(a)(4)(A).

Here, the Debtor admitted that the he failed to list the Bank Account and transfers of the Diggum Checks to Rhonda on his Petition. PX 16. As a result, the first and second requirements of *Stamat* are satisfied. There seems little question also that the Debtor knew or should have known that the statements were false omissions, as he was the transferor of the Diggum Checks and controller of the Bank Account. *Fink*, 351 B.R. at 527. As a result, the third requirement is also extant.

Turning to the fourth requirement, Monty must show that the Debtor acted with the requisite intent, or at the very least reckless disregard, to harm the bankruptcy estate when he made the omissions. As before, the court finds the Debtor's testimony in this regard credible.

The Debtor testified that he "could have swore [sic]" that he did not start receiving the Diggum Checks until postpetition. Tr. 57-58, Oct. 25, 2016. If the checks were received postpetition, then they would not have been property of the bankruptcy estate in a chapter 7 case and their disclosure on the Debtor's schedules and statement of financial affairs would not have been required. *See* 11 U.S.C. §§ 521(a)(1)(B)(i) and 541(a)(2).

Irrespective of when the Debtor believed they were received, the Debtor made clear that his motivation in regard to the Bank Account was also bankruptcy planning. Tr. 55-56, Oct. 25, 2016 ("Because I filed for bankruptcy, and my lawyer said this is what we had to do to pay household bills, buy groceries, stuff like that."). Monty's counsel did not press for any further explanation, *id.*, and no evidence exists that the Debtor did anything other than pay household expenses with the funds. As previously mentioned, bankruptcy planning alone does not evidence the required intent.

In light of the Debtor's uncontroverted testimony, the court cannot conclude that this omission was made with fraudulent intent. There appears to be no reckless disregard for the truth in failing to list the Bank Account—an account in Rhonda's name—and the transfers of the Diggum Checks.[9]

Moreover, the fifth requirement of *Stamat* is clearly not satisfied. The Debtor listed $4.5 million in assets through his personal chapter 7 bankruptcy. Tr. 106, Oct. 25, 2016. In relation to the substantial list of assets the Debtor did disclose, the failure to disclose the Bank Account and transfers of the Diggum Checks to Rhonda is *de minimus*. As noted above, the potential impact on Monty is miniscule, and pales in comparison to the overall amounts in question. The court cannot conclude, on the facts unique to this case, that the omission in question was material to the Debtor's bankruptcy case.

---

[9] The control exercised by the Debtor over the Bank Account does appear to dovetail with the factors set forth in *Smiley*. However, given that the funds were used for joint, household expenses, that control does not appear to be borne out of fraudulent intent.

14

The court therefore finds that Monty failed carry its burden of proof with respect to Count II of the Amended Complaint. Monty has failed to establish that the Debtor acted with the requisite intent with respect to what were, undeniably, *de minimus* omissions. Accordingly, the court declines to deny the Debtor's discharge under section 727(a)(4)(A), and judgment in favor of the Debtor on this count will be entered.

## CONCLUSION

In this case, the court has been given little or no cause to exercise the drastic remedy of denial of discharge. Despite what appear to be zealous efforts by Monty to discover wrongdoing, the matters identified in the Adversary are *de minimus* and subject to alternative explanations. The Debtor has proven to be a credible witness, testifying in a straightforward and candid manner. That testimony belies the fraudulent intent Monty would have the court find. To deny the Debtor a discharge on the facts at bar would be unjust.

For the foregoing reasons, the court finds that Monty has failed to carry its burden under sections 727(a)(2)(A) and (a)(4)(a). As a result, judgment in favor of the Debtor will be rendered on both counts of the Amended Complaint. A separate judgment will be issued concurrent with this Memorandum Decision.

Dated: December 5, 2016

ENTERED:

Timothy A. Barnes
United States Bankruptcy Judge